# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MARCUS AUGUSTUS JOHNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 07 C 530 |
| | ) | |
| AMTRAK POLICE UNIT (Chicago Police Department District #1), | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Marcus Augustus Johns brought this action against National Railroad Passenger Corporation (incorrectly named Amtrak Police Unit), Officer Michael Columbo, Illinois Assistant State's Attorney Michael Zalewski, and Cook County Circuit Court, Court Reporter Marian Zientek. Plaintiff, a legally blind man, complains of violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and various civil rights violations, including violations of his Fourth, Fifth, and Fourteenth Amendment rights. Defendant National Railroad Passenger Corporation ("Amtrak") now brings a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, we deny in part Amtrak's motion to dismiss.

## BACKGROUND

In reviewing a motion to dismiss under Rule 12(b)(6), we must accept the complaint's well-pleaded factual allegations as true, including the inferences reasonably drawn from them. McDonald v. Household Int'l, 425 F.3d 424, 425 (7th Cir.2005). The complaint should be dismissed only if the plaintiff "failed to allege any set of facts upon which relief may be

granted." Pickrel v. City of Springfield, Ill., 45 F.3d 1115, 1118 (7th Cir.1995). *See also* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). And although a *pro se* plaintiff is not excused from compliance with procedural rules (McMasters v. U.S., 260 F.3d 814, 818 (7th Cir.2001)), we "employ a more liberal standard of review than would be used where an attorney prepared the complaint." Billups v. Kalemis, 2001 WL 685929, *1 (N.D.Ill.2001). *See also* Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir.1998) (noting "the well-known admonition that district courts must construe *pro se* pleadings liberally").

Generally, we will not look beyond the four corners of the complaint in determining whether plaintiff has stated a claim. Palda v. General Dynamics Corp., 47 F.3d 872, 875 (7th Cir.1995). In ruling on a 12(b)(6) motion, however, we may take judicial notice of matters of public record without converting the motion to dismiss into a motion for summary judgment. Anderson v. Simon, 217 F.3d 472, 474-75 (7th Cir.2000). We take the following facts from the plaintiff's complaint.

Plaintiff arrived at Chicago's Union Station on September 24, 2005, at 6:40 p.m., from Temple, Texas. Upon his arrival, plaintiff, a disabled man, was denied access to a public restroom in Union Station, taunted, and detained by maintenance men and a building engineer. Plaintiff contends that such denial of access to the restroom violated the ADA. Plaintiff proceeded to exit the building and enter a public taxi in an effort to reach his mother's house. He was again detained by defendant Columbo, who threatened the cab driver with license revocation should he accept plaintiff's fare. Outside Chicago's Union Station, Columbo and a number of Amtrak employees ignored plaintiff's pleas of his urgent need to relieve himself. Because of such an urgent need, plaintiff unzipped his pants behind a lamp post in an attempt to urinate. Thereafter, defendant Columbo arrested plaintiff for indecent

exposure. Plaintiff seemingly asserts a claim of false imprisonment in violation of his Fourth Amendment rights based on Columbo's actions.

Upon arrest, plaintiff's rights were once again allegedly violated as no officer informed him of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Such an allegation suggests a violation of plaintiff's Fifth Amendment rights. Once in custody, plaintiff was denied access to a toilet for 45 minutes. Plaintiff seemingly suggests that such a denial violated his Fourteenth Amendment rights to be free from cruel and unusual punishment. Plaintiff further complains that his Texas state identification card was illegally removed from his wallet, in violation of an Illinois criminal statute making it illegal to tamper with public records, 720 ILCS 5/32-8. Finally, upon filing this lawsuit in the Circuit Court of Cook County, plaintiff asserts that defendants Zalewski and Zientek conspired to "have this lawsuit thrown our behind my back" (cplt, p.7).

## DISCUSSION

Defendant Amtrak asserts that plaintiff has failed to state a claim upon which relief can be granted with respect to his ADA claim. Title II of the ADA states: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Amtrak is specifically defined as a public entity. 42 U.S.C. § 12131(1)(C). And by asserting his status as a legally blind man, at this stage plaintiff has sufficiently pled his status as a qualified individual under the ADA.[1] *See* 29 C.F.R. § 1630.2(h)(1) (defining

---

[1] Under the ADA, "disability" with respect to individuals is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment" 42 U.S.C. § 12102(2)(A)-(C).

"physical or mental impairment" as "any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems:...special sense organs...").

In order to survive a motion to dismiss, however, plaintiff must also allege a relationship between his disability and his inability to access the services provided by defendant. *See* Wisconsin Community Services, Inc. v. City of Milwaukee, 465 F.3d 737, 752 (7th Cir.2006) ("Similarly, under our Title II case law, the 'on the basis of' language requires the plaintiff to show that, 'but for' his disability, he would have been able to access the services or benefits desired"). Amtrak argues that, even reading plaintiff's complaint as liberally as possible, "there is simply no indication that plaintiff was denied access to the restroom while non-disabled (sighted) persons were allowed access" (def's motion, p.4). While plaintiff's complaint is less than clear with regard to what occurred when he attempted to access the public restroom, he does allege that he was the victim of "intentional" discrimination and that he was "denied access and detained from using a public toilet" in violation of the ADA. Plaintiff's reference to maintenance men who detained him does not take his complaint out of the realm of the ADA because it is not clear that the restroom was closed to all patrons. While one might easily read plaintiff's complaint to allege that the restroom was closed for maintenance, we decline to dismiss a complaint, especially one written without the assistance of counsel, unless there is no way to construe the complaint to allege a set of facts upon which relief may be granted. Therefore, defendant's argument that plaintiff's inability to access the restroom was not connected to his disability is premature – such a determination will be made upon the fleshing out of the facts of plaintiff's complaint. *See* Vincent v. City Colleges of Chicago, —F.3d—. 2007 WL 1238745, *4 (7th Cir.2007) (complaint need not allege facts to

survive a motion to dismiss under 12(b)(6)). Similarly, defendant's cite to <u>Foley v. City of Lafayette, Indiana</u>, 359 F.3d 925 (7th Cir.2004),[2] in support of its argument that neither isolated actions of employees nor temporary interruptions in access come within the protection of the ADA, while potentially dispositive in the future, is premature at this stage. It is possible to read plaintiff's complaint to state a claim against Amtrak for failure to properly train its employees (cplt, p.7). To the extent that Amtrak employees' discriminatory actions include failure to accommodate disabled persons, plaintiff has sufficiently pled Amtrak's responsibility for such actions. *See* <u>Access Living of Metropolitan Chicago v. Chicago Transit Authority</u>, 2001 WL 492473, \*7 (N.D.Ill.2001) (denying a motion for summary judgment where plaintiffs showed sufficient evidence that the CTA was deliberately indifferent to discrimination on the basis of disability by the CTA itself and its employees). Therefore, at this time we decline to dismiss plaintiff's ADA claim under Title II.

Amtrak next argues that plaintiff's constitutional claims must be dismissed. Plaintiff has seemingly asserted violations of three of his constitutional rights – his Fourth, Fifth, and Fourteenth Amendment rights. Amtrak treats such allegations as claims under 42 U.S.C. § 1983. Section 1983 liability is reserved for persons acting under the color of state law. Analogous actions against federal actors are brought as so-called <u>Bivens</u>[3] actions. While it is clear that Amtrak is considered an instrumentality of the United States for the purpose of individual rights guaranteed under the Constitution (<u>Lebron v. Nat'l R.R. Passenger Corp.</u>, 513 U.S. 374, 394 (1995)), some courts have found Amtrak to be a "state actor" for purposes

---

[2] <u>Foley</u> was written in response to a summary judgment motion, not a motion to dismiss for failure to state a claim.

[3] <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

of § 1983. *See* DeSilvis v. Nat'l R.R. Passenger Corp., 97 F.Supp.2d 459, 460 (S.D.N.Y.2000) ("Amtrak is also a state actor for purposes of liability under section 1983 in utilizing its police power..."); Jacobson v. Nat'l R.R. Passenger Corp., 1999 WL 1101299 (N.D.Ill.1999) (railroad police officers can be liable under § 1983); Greco v. Nat'l R.R. Passenger Corp., 2005 WL 1320147, *16, n38 (Amtrak is subject to suit under § 1983).

It is unclear from plaintiff's complaint whether Columbo, the individual responsible for violating his rights, was a federal or state actor. If he was a federal actor, plaintiff may have an action under Bivens. If that is the case, however, it does not appear that plaintiff can bring suit against Amtrak under Bivens. In the last 35 years, the Supreme Court has been very careful not to extend Bivens' implied right of action beyond individual actors or situations where the plaintiff would be left without a remedy. For example, in F.D.I.C. v. Meyer, 510 U.S. 471 (1994), the Supreme Court declined to extend Bivens actions to suits against federal agencies. In Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001), the Supreme Court went further, declining to extend Bivens actions to private corporations operating under the color of federal law. Between Meyer and Malesko, we cannot see how Amtrak could be sued under a Bivens suit.

It is possible, however, to read plaintiff's complaint as alleging that defendant Columbo, at the very least, was operating under color of state law. 49 U.S.C. § 24305, setting forth the general authority of Amtrak, notes, "Amtrak may employ rail police to provide security for rail passengers and property of Amtrak. Rail police employed by Amtrak who have complied with a State law establishing requirements applicable to rail police or individuals employed in a similar position may be employed without regard to the law of another State containing those requirements." § 24305(e). In other words, Amtrak's rail police

operate under state, not federal, law. Further, Illinois law recognizes the relationship between the state and rail police, noting, "While engaged in the conduct of their employment, the members of such railroad police force have and may exercise like police powers as those conferred upon any peace officers employed by a law enforcement agency of this State." 610 ILCS 80/2. Therefore, we find, like the analogous case of Jacobson, that § 1983 is the appropriate means by which plaintiff should vindicate his constitutional rights against Columbo.

Defendant asserts that Columbo is shielded from liability for false arrest by probable cause and/or qualified immunity. It is true that "[p]robable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir.2006). And while plaintiff may have pled himself out of court with regard to a false arrest claim by stating that he unzipped his pants prior to being arrested for indecent exposure, he retains a Fourth Amendment false imprisonment or unreasonable seizure claim. He states that in his effort to take a public taxi to his mother's house, he was removed from the taxi, unlawfully detained, and saw his driver refuse his fare due to Officer Columbo's threats. All of this occurred prior to any indecent exposure on the part of plaintiff. Under Supreme Court precedent, a police officer can briefly detain a person for investigative purposes "if the officer has a reasonable suspicion supported by articulable facts that criminal activity is afoot." U.S. v. Ienco, 182 F.3d 517, 523 (7th Cir.1999) (citing Terry v. Ohio, 392 U.S. 1, 21-22 (1968)). Reasonable suspicion is "'some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity,'" and requires "something less than what is necessary to show probable cause," and something "more than a mere 'hunch.'" *Id.* (internal citations

omitted). Here, plaintiff has not pled himself out of court with regard to reasonable suspicion. Therefore, while his false arrest claim is dismissed, he retains the right to pursue a false imprisonment/unreasonable seizure claim.

Amtrak's citation to qualified immunity fares no better. Qualified immunity shields officers from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining violations of plaintiff's Fourth Amendment right to be free from unreasonable seizures, we balance the nature and quality of the intrusion against the governmental interests at stake. Sallenger v. Oakes, 473 F.3d 731, 739 (7th Cir.2007). Such is not an inquiry we can make at this stage in the proceedings.

We are left, then, with the determination of whether Amtrak can be held liable under § 1983. Because we believe that Amtrak's employee was acting under color of state law, we allow plaintiff to pursue his § 1983 claims against Amtrak as well. It is likely, also, that in supervising and training its rail police Amtrak was utilizing its police power and, therefore, acting under color of state law. *See* DeSilvis, 97 F.Supp.2d at 459, n2.[4] Amtrak's protest that it cannot be held liable under a *respondeat superior* theory (def's motion, ¶ 18) is irrelevant. Citing Monell v. Department of Social Services of the City of New York, Amtrak correctly states that Amtrak cannot be held liable under § 1983 "solely because it employs a tortfeasor." 436 U.S. 658, 691 (1978). Amtrak omits, however, that the Monell court held that a

---

[4]Our determination is bolstered by Amtrak's own submissions. Whereas plaintiff did not specifically state that he was bringing suit under § 1983, Amtrak and its counsel proceeded under that understanding and never suggested that plaintiff's constitutional claims were foreclosed as to Amtrak as an improper Bivens action.

municipality (or, in this case, Amtrak) can be liable under § 1983 "for monetary, declaratory, or injunctive relief where...the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers." *Id.*, at 690. Further, the Monell court determined that a municipality could be liable for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.*, at 690-91. As noted above, we read plaintiff's complaint to allege Amtrak's failure to properly screen its employees to comply with the ADA and to deal with disabled customers. Such a complaint, if it suggests a policy or custom of inadequate training or amounts to deliberate indifference to the rights of disabled persons, could create § 1983 liability. *See* Alexander v. City of South Bend, 433 F.3d 550, 557 (7th Cir.2006) (citing City of Canton v. Harris, 489 U.S. 378, 388-89 (1989)). Although the ability to succeed in showing the absence of valid policy may be difficult (*see* Calhoun v. Ramsey, 408 F.3d 375, 380-81 (7th Cir.2005)), we do not now foreclose plaintiff's § 1983 claim against Amtrak. *See* Kiswani v. Phoenix Sec. Agency, Inc., 2006 WL 463383, *4 (N.D.Ill.2006); Ramos v. Town of Cicero, 2005 WL 1838334, *4 (N.D.Ill.2005).

Plaintiff also attempts to state a violation of his Fifth Amendment rights by asserting that he was never told of the warnings associated with Miranda v. Arizona, 384 U.S. 436 (1966). Miranda warnings were developed to protect against one's right not to self-incriminate himself. As plaintiff never alleged that he made an incriminating statement, his constitutional rights were not impinged simply because noone read him his Miranda warnings. *See* Chavez v. Martinez, 538 U.S. 760, 772 (2003). Therefore, we dismiss plaintiff's Fifth Amendment claim.

Next, we turn to plaintiff's allegations of inhumane treatment. He states, "Only after 45 minutes (inhumane) treatment of my arrest I was then granted access to use the toilet" (cplt, p. 5). We read such allegations to assert a Fourteenth Amendment right to be free of deliberate indifference to his medical needs – his need to access a toilet.[5] Inability to access a toilet is insufficient to state a violation of plaintiff's Fourteenth Amendment rights. While deliberate indifference to a detainee's medical needs may violate his constitutional rights, such a deprivation occurs only where the detainee has an objectively serious medical condition and his need was consciously disregarded. See Edwards v. Snyder, 478 F.3d 827, 830-31 (7th Cir.2007). The medical condition must have "'been diagnosed by a physician as mandating treatment or...[be] so obvious that even a lay person would perceive the need for a doctor's attention.'" Id. (citing Greeno v. Daley, 414 F.3d 645, 653 (7th Cir.2005)). Plaintiff's need for access to a toilet does not meet that standard. Plaintiff's complaint may have intended to allege additional reasons why his treatment was inhumane. Inserting one word, "inhumane," into a complaint, however, does not place defendants on notice of their alleged constitutional violations. Therefore, plaintiff's Fourteenth Amendment claim is dismissed with leave to amend.

Plaintiff also asserts several violations of Illinois criminal law, specifically 720 ILCS 5/32-8, which prohibits tampering with public records. Plaintiff does not have standing to bring criminal allegations against defendants. And because we cannot see how such allegations (removal of plaintiff's identification card during his arrest, omission of court

---

[5] Whereas the Eighth Amendment protects prisoners from deliberate indifference to their medical needs, the Fourteenth Amendment extends that protection to pretrial detainees. Cavalieri v. Shephard, 321 F.3d 616, 620 (7th Cir.2003).

testimony, or conspiracy to have his state court case thrown out[6]) could be translated into a civil action, we dismiss plaintiff's criminal allegations and the defendants associated with those allegations.

## CONCLUSION

For the reasons stated herein, we deny in part Amtrak's motion to dismiss. We dismiss plaintiff's Fourteenth Amendment inhumane treatment claim with leave to amend. We dismiss with prejudice plaintiff's allegations under Illinois criminal law. We dismiss, with prejudice, defendants Michael Zalewski and Marian Zientek.

JAMES B. MORAN
Senior Judge, U. S. District Court

June 1, 2007.

---

[6]Taking judicial notice of a public record, we note that plaintiff's state court case was initially dismissed for want of prosecution (*see* notice of removal, exh. A). As plaintiff's case was later reinstated (*see id.*), we can find no injury, and thus, no liability.